The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. You may be seated. Our next case this morning is United States v. Benton, Mr. Jeremy Thomson. Good to have you with us, sir. Good to be here, Your Honor. Are you court-appointed? Yes, I am with the Federal Defender's Office. We appreciate your work, and good to have you with us. Thank you. Good morning, and may it please the Court, my name is Jeremy Thomson, and I represent Mr. Benton on what is by my count his tenth and hopefully final appeal to this Court. He is currently serving, obviously our contention is, an illegal sentence. The government did not file its information pursuant to 21 U.S.C. Section 851A1 before trial. They filed it nine days after jury selection. Now, when do you say that filing was due? That filing was due before the jury was picked. No, but you said it was due, that's what the statute says, before trial. Yes. Now, when was the information supposed to be filed, according to you? Before the jury selection occurred. That's your position? That is our position, yes. All right. And that is the position, the uniform position, of all of the appellate courts, other circuit courts of appeals, which have addressed this issue. Before we get to what the government did or didn't do in a timely manner, what about what appellate didn't do in a timely manner? You just said that this is the tenth time, tenth appeal, tenth case, and the first time that he has raised this sentencing argument in 26 years. So, isn't that a little late? Not under the scope of the mandate rule and this court's remand for a de novo resentencing. Now, to answer my own question here a little while ago, it was filed on April the 15th, 1998. Yes. Okay. And the jury selection occurred on April the 6th of 1998. And so the filing of the information was nine days after the jury was selected. The jury was not sworn until the 20th of, until five days later, after the information was filed. So, Your Honor, there was not much of any or any reason for Mr. Benton to have raised this issue previously. When did he raise the issue? He raised it when I raised it. When did you raise the issue? I raised it prior to sentencing to the resentencing below, before the district. And what year was that? That was in 2022. What date? Let me pull up the exact filing date, Your Honor. It was filed on December 15th, 2022. 15th of December of 2022? Yes. Okay. And the trial was in 1998? Yes. So the initial sentencing, I assume, was in 1998? It was in December of 1998. Yes, it was almost 24 years to the day that I filed the response to the 851 information. And so why isn't 24 years later too late? Because the district court was required to impose and consider Mr. Benton's challenge to the 851 enhancement. Because the district court could not impose an enhanced sentence under 851 without first assuring itself that the 851 information was timely filed. That is what the text of 851 compels. And all 851 requires is that we file the information before sentencing. And he was being sentenced on . . . And he was sentenced in December of 1998, you said, initially? Initially, yes. And the 851 information had already been filed because it was filed at the time of trial?  At the time of the jeopardy attaching, yes, the 851 information had been filed. Jeopardy attaching, you're saying? Yes. When did jeopardy attach? When the jury was sworn. Not when it was impaneled, but when it was sworn. But there's obviously a difference between whether jeopardy attaches and whether before trial under 851 is met. Well, there's a difference in your argument. Yes, yes. That's what you want us to say, there's a difference. Yes, I would like that, yes, Your Honor. We can say that before trial means when jeopardy attaches. Before jeopardy attaches. This court can say . . . It was filed before jeopardy attached. It was filed before jeopardy attached, yes. And if this court did so, that would be, again, against the other decisions of the other circuit courts of appeals, which have addressed the issue, which have all uniformly said that it is prior to jury selection, not jeopardy attaching. Well, we have this case called Soucy, which was decided in 2012. The sentence is too long for me to do it from memory, so I'll read it to you. When a case is generally remanded to the district court for resentencing, the district court may entertain new arguments as necessary to effectuate the sentencing intent, but is not obligated to consider any new evidence or arguments beyond that relevant to the issues raised on appeal. But the mandate rule has a third exception, which is for issues of manifest injustice, which imposing an illegal sentence would work a manifest injustice. And so even if the district court . . . Even if . . . so obviously our first position is that the mandate rule did not apply because it was a de novo resentencing on all counts. The government initially took the position that the only thing that this court had remanded for was resentencing on the 922G count, but has before this court acknowledged that what the district court . . . And why didn't the waiver apply? Why doesn't waiver apply? Going back to you didn't raise this for 24 years. Well, the earliest . . . obviously the earliest opportunity for it to have been raised was . . . The first sentencing. . . would have been at the first sentencing. Yeah, 1998. And then after that it would have been very difficult to raise. But it wasn't raised in the first . . . It was not. I'm going to come back to the first sentencing in a second. You said it would be difficult to raise. It would because this court in Beasley held that it's not plain error for a district court to find that the information was timely filed after jury selection. So, he had to have preserved the issue in order to raise it again on appeal at any point in time. Be it on the 2255 because defense counsel . . . It would have been difficult to say defense counsel was ineffective perhaps for failing to raise the issue. But, regarding the original sentencing, there was no real reason for Mr. Benton's sentence for Mr. McBranty to have raised this argument. The sentencing enhancement increased Mr. Benton's sentence at that point in time from 10 years to life to 20 years to life. That's a 10 year difference. But, in 1998, the guidelines were mandatory. And Mr. Benton's sentencing range was life. And, if Mr. McBranty had been successful in his objections, which he was not, but if he had been successful in his objections at sentencing, his guideline range would have been 360 months to life. Plus a consecutive 60 months on top of it. So, the district . . . Lawyers raise objections all the time that they may lose, even knowing that they're going to lose those, in order to make the record and preserve the objection so we can consider it. And here, that wasn't done way back in 1998 when it could have been done. It was not, but it was not a waiver. It was not a knowing relinquishment of the right to make that argument. If anything, it was forfeited. And, there are . . . Waiver is different, right? I am prohibited from making an argument that has been waived, that he affirmatively waived before. But, if it was merely forfeited, then, in the interest of justice, the court can excuse the prior forfeiture. And, that's where you go to the fundamental . . . Manifest injustice. Manifest injustice. Yes. So, that's what we have to . . . If we think that this . . . If I think that this was forfeited, then I would, in order for your . . . For appellant to prevail, I would also have to find that there was a manifest injustice here. And, I guess that would be because the sentence is much higher than it should have been. That is correct, Your Honor. Ten years. Ten years too high.  He would not be facing anything higher than 20 years. It was . . . Was it count one? Was the big . . . Yes. Was the 30-year count or 20-year count, depending on which way you count it? Yes. Count one carries either 20 or 30, depending on whether 851 information . . . And, the sentencing order that I looked at said that . . . referred to that as count four. It gave the big sentence to count four, which I thought you'd be saying was a typo or something. It said . . . On page 276 of the joint appendix, it says, The defendant is hereby committed to the custody of the Federal Bureau of Prisons for a total term of 360 months as to count one. Of 120 months as to count four. So, that was in the original sentencing order that this court vacated that he was serving the 30-year sentence for the 922G offense. And, this court found that the ACCA enhancement was invalid. Well, I won't say that bad facts make for bad law. I'll give you that the other circuits have said . . . We have not interpreted what . . . before. The phrase . . . We've not interpreted this issue. But, other circuits, as you say, have. And, if we were to depart from that, we obviously would create a circuit split. And, we probably would look bad on that. So, given the facts of this case and the timeliness issues and all that, why shouldn't we just leave it alone? Well, because Mr. Benton is serving . . . And, obviously, again, our position is he is serving an illegal sentence. And, so . . . Well, he's already served six beyond the 20-year. Yes. Yes. He's well past whatever the statutory maximum, the 20-year maximum would be. Otherwise, for the 841B1C offense. Why would we raise that under a habeas corpus petition? How many of these previous ten proceedings were you involved in? This one. How many lawyers has he had? Since 1998, then? He has had several. I know of at least . . . I can name at least three. Because, he had Mr. McBranty. I don't remember. I believe Mr. McBranty also represented him on the direct appeal to this court. He had Paresh Patel, who represented . . . Well, I don't know their names either. Who represented him before this court. You were the first one to identify this issue. Yes. When was the issue created, you say, by the . . . It was triggered by the guidelines not being mandatory anymore? It was . . . The issue existed in 1998. Mr. McBranty could have raised this objection in 1998. And he did not. And procedurally, beyond that point, it would have been difficult for any attorney to raise it because it would not have been preserved. Or appropriate, perhaps, for the court to consider. If it was in the 2255, alleging ineffective assistance of counsel, his subsequent 2255, which this court granted him authorization to file, could have only been for Johnson claims. So, in his 2255, his second 2255, he could not have raised this issue. But, could he have raised it at the original sentencing? Yes. And we agree that it's forfeited by failing to consider it if this court finds that the mandate rule applies. Again, we would argue that the mandate rule, this court's mandate, was a general remand for resentencing and reopens all sentencing issues up again on remand. This court's opinion in Kennedy had . . . Now, that was a government's appeal, but the court had granted the defendant a new trial and had imposed a sentence, had granted the defendant a new trial. Then the case had gone up on appeal. This court vacated and remanded. And this court found defense counsel ineffective for failing to make a guidelines challenge at the subsequent resentencing, even though this court directed that the conviction be reinstated. So, even though defense counsel didn't make the argument the first time, he was . . . she . . . forgive me, it was a she . . . she was ineffective for failing to make the argument at the resentencing because she could have done so. And so, under that logic, I would be ineffective for failing to make the 851 argument at Mr. Benton's resentencing two years ago. Well, is Benton abandoning his appeal under the First Step Act? Your Honor, I see that I'm out of time. You answer questions when you get them. Thank you. We did not . . . and it's . . . I believe in footnote one of my brief that we did not raise an argument regarding the First Step Act. I have a ministerial duty to file a notice of appeal when instructed to do so, and I filed a notice of appeal from the First Step Act decision. I do not believe there is anything particularly in light of this Supreme Court's decision in Concepcion and this Court's decision in Troy. I am not aware of anything viable in this record which would make for a successful First Step Act argument, which was why I did not present one in my brief. Is that a long way of saying . . . Saying yes. Yes. Yes. Thank you, Mr. Thompson. Thank you. Mr. Shelley. May it please the Court, Your Honors. Chris Shane for the United States. Good to have you, sir. Thank you, Judge. I want to start by addressing two points that were brought up by the Court's questioning that I think are worth consideration. The first thing is to distinguish the Kennedy case, which opposing counsel talked about. There was a question that was asked about why isn't this waived? And the same question was raised in Kennedy. Why wasn't there a waiver when this argument wasn't brought up, when McCollum wasn't raised below in McCannedy? And the answer was McCollum hadn't been decided at the time that Kennedy was initially sentenced. And so I think Kennedy is distinguishable. And I think it stands for . . . it does not in any way eliminate the mandate rule. Rather, it suggests that where an argument is not available, the Court is not going to hold that argument to have been waived. So that's the first point I would make is that . . . And this argument would have been available at the first sentencing in 1998. Yes, Your Honor. That's absolutely correct. How did all these nine previous lawyers miss it? How did the nine lawyers miss it up to this point? I don't think they were as good as Mr. Thompson, Judge. To be honest . . . But he says it's not waived, it's forfeited, and thereby this doctrine of manifest injustice triggers our review because it's 10 years bump on each sentence. Mandatory minimum, right? No. Not mandatory minimum. Yes, Your Honor. But it's 10 more years. Yes, Your Honor. He could have gotten . . . without this information, he could have only gotten 20 years on count one. And with the information, he got 30 years on the count one. He got 30 years on count one. And if we say that information is untimely, look into the merits, then he only can get 20. Yes, Your Honor. He can get way more than 20 if the court follows the guidelines and . . . Well, he got way more, but he had also a consecutive sentence of five years. Yes, Your Honor. On count six or maybe. Yes. So we're talking about a maximum of 35 or 25. His maximum . . . He can only gotten 20. Yes, Your Honor. It goes from 360 months to 240 months. So if we agree with him on that, then do we fix it or do we send it back? No, Your Honor. I think you would certainly send it back because the guidelines are going to instruct the district court judge to run the sentences. He's got six convictions. So we send it back for another plenary sentence proceeding? Certainly, rather than . . . We vacate the sentence and send it all back, and they start all over again where it was in 1998. Hopefully not that far back. I got this thing, this information. I looked at this information that you all filed in 1998, and I can't find a signature of the United States Attorney or the Assistant United States Attorney. It's a single page. It looks like, if absent the stamp at the top and some numbers up there makes it kind of look official, it would be what we would call, by practice of law, a fugitive document. Do you see that? It's on page JA 075. 851 information. It's a single page, two paragraphs. That's what's in the JA, but it looks like there would be, if that's the end of the writing, there would be a signature by the United States Attorney or somebody on his behalf or her behalf. Yes, Your Honor. To be honest with you, I am not sure whether that's an error in that the full document wasn't included in the JA. I mean, doesn't an information filed by the United States Attorney have to be signed? Yes, Judge. I think it does. Like an indictment has to be signed, but information only has to be signed by the United States Attorney. Or you, if you're authorized to sign it for him. We don't have that in the record. Not the record. I'm talking about the JA. In the JA. And we weren't, my staff told me that we couldn't find it in the court record. A signed version of this thing. But there's a date stamped up there. It says April 15, 1998. Yes, Your Honor. Again, I think this is something that should have been, if that was going to render that information defective, that should have been raised at the court. Who's going to raise it? Why are they waiting for me? Why would you be waiting for me? I mean, it's something that every lawyer on both sides has been involved in here. If there's anything to it, I don't know that there's anything defective about it. On the record, it looks funny. It does look funny, Judge. I'll give you that. Well, I've followed up on that. So what? If it's not signed, the problem's solved. We just send it back. You don't have an 851? No, Your Honor. I think that is the same. No, she could come up, maybe. That's right. That's the same type of error that we're arguing would be waived. It's outside the scope of the court. Yeah, that would have been forfeited. So that's two objections that weren't made back in 1998. The first one, the one that wasn't made, is that it wasn't timely filed. The second one that Judge King brings up is it wasn't filed at all. Not by the U.S. attorney. It wasn't signed. No signature. Well, if there's someone who had authority to do it, you agree with that? Yes, Your Honor. The information has to be filed by the United States attorney. Yes, Your Honor. And there's a document that's stamped, but there's no signature. That is what appears in the JA. So on this record, maybe, if it's defective, then the question is whether it was forfeited and he gets the next 10 years because the U.S. attorney failed to sign the document. Well, let me go to that third prong where we're talking about this blatant injustice because I think that that actually would resolve both of these issues. And the language from the Doe versus Chau case that we cited is essentially that deviation from the mandate rule is only allowed in these particular exceptional circumstances. The first two don't apply here, but it says the third one is when a blatant error in the prior decision will, if uncorrected, result in a serious injustice. Well, let me ask you, in terms of that word blatant, for an error to be blatant, do we have to have binding precedent? I would argue that we do, Judge. And Beasley essentially says there's no plain error in having this 851 filed after jury selection. So we don't have a binding precedent in this circuit? No, Your Honor, we do not have a binding precedent. Your position would be blatant, so therefore it's not a manifest injustice. Judge, I would argue that if an error doesn't rise to the level of being plain, it certainly doesn't rise to the level of being blatant. Well, if the information wasn't filed at all, that would be blatant. It would be faulty. It would be fundamentally defective. I would agree that the information needs to be signed. Again, I'm not sure, Your Honor indicated it wasn't in the original court record. I think what I would go back to is that. But I'm not saying it would be any different than if it was filed too late because the statute sets up when it's supposed to be filed. And before trial or before plea, and here it was filed after the jury was selected or identified, maybe is the right word to use, after the jurors were identified before they were sworn to be the jury. Yes, Your Honor. And maybe that's when the jury is selected at the time they're sworn in because if some juror for some reason couldn't come back the day they were to be sworn, they'd have to find another juror. Yes, Judge. I mean, or fix it. Maybe the jury selection procedure is synonymous to the jury being sworn. Maybe that's it. I'm just thinking out loud. I agree with you. If that's the case, you're timely. Yes, Your Honor. But if the thing is defective, if it's not an information, if it's a fugitive paper, it doesn't have any legal impact. I think that even if it's, even if the challenge to it being defective would still need to be raised in a timely way, not 24 years later. And that brings me to the second prong of that. It's not just that we have a blatant error. It's that that blatant error left uncorrected will result in a manifest injustice. And I think the defense has kind of collapsed those two arguments together and said essentially the blatant error, the fact that he's got a quote-unquote illegal sentence, that's the serious injustice. But the reality is, and we make this point in our harmless error argument, Mr. Benton is almost certainly, the court can say with great confidence, going to face the exact same sentence if this case is remanded back because the district court has, it's either 90 years or 100 years worth of statutory room to Well, he had all that room, but they didn't, I don't know who the judge was back then, but Judge Currie now, right? It's the same, Judge Currie has had this Was Judge Currie back then, too? Yes, Your Honor. Okay, she's familiar with it. Yes, yes, Your Honor. She's an able, experienced judge. Most certainly. We admire her. I don't know, I don't remember if I'm getting myself confused with state law or federal law because you guys are from South Carolina and I am too, but I thought all challenges to indictments had to be made prior to the swearing of the jury, otherwise it's a waste. Is that still the law in the federal area? I don't know, Judge Floyd. We'd be happy to submit supplemental briefing at the court. I'm sure it's the state law. Well, the federal law on double jeopardy is this jeopardy attaches when the jury's sworn. Jeopardy attaches when the jury's sworn, and I think your colleague, Mr. Thompson, agrees with that point. Yes, Your Honor. Whether that's the right time to put in, they don't have jeopardy in this statute. They got it before the trial. We would argue that would. But you've got to file the information, and if it's unsigned, what if you've got authority, you'd have authority to sign it today, and you're the representative of the United States of America. If you sign it today, would that make it good? I don't know that that would improve the standing 28 years later, Judge, I think. But I do think that some of the points you're raising about when the jury is sworn, I don't think the court actually needs to get to the merits of that or create a circuit split. You don't want us to get to any merits. But if we get to the merits and agree with you on the jeopardy attaching point, you prevail. Yes, Your Honor. I think that all this other stuff is wrapped up. Yes. But I think the court can deal with that using either the mandate rule or harmless error before it has to get to the merits. But the point I want to make is I don't think that the merits, when the defense, when the appellant describes, you know, all the weight of the authority is on the side of file it before jury selection. Really what happens is you have one Eighth Circuit case that comes down, and that Eighth Circuit case introduces this extra textual language of ample time or ample notice, which is not anywhere in the statute. And then all of the other circuit court decisions, most of them essentially assume that that's the deadline, and then they're dealing with other questions. Yeah, all it says is before trial. So how would you define trial? Your Honor, I think that the government would define trial as when the jury is sworn. When jeopardy attaches for purposes of this particular issue.  So next week if you have a case that's going to trial and you start jury selection on Tuesday and somebody asks you at lunch, what are you doing today? What are you doing? You're not going to say I'm in trial? Well, it might. I guess now you won't. Right. No, Judge. I mean, trial, because there's no other guidance, just common sense, trial starts when the case is called and the jury is starting to be selected. When we review trial records, we have the whole record. Yes. Which includes jury selection. Certainly. But you review a lot of things that happened even before the jury selection as well, and the fact that something is necessary to get to a trial doesn't necessarily make it hard. When is the jury selection completed? I think that's a good question, Your Honor. I think that, you know, I hadn't thought of this before, but Your Honor raised it. I think it's completed when they're sworn in, because up until that point you could conceivably have a problem where not enough jurors show up and you've got to pull another jury. Well, you're saying then that jury selection and jury sworn are the same thing, or synonymous? No, I would say that jury selection can happen a long way before the jury is sworn. As it did here. It happened several weeks before, right?  And sometimes jury selection is, I tried a case at the beginning of the month, we pulled the jury and we started opening statements. On behalf of your colleague, Mr. Thompson. He takes that position. Well, I think my point in that, Judge, is it would be strange for Congress to pick a deadline that turns on an accident of court scheduling. Because sometimes, if we're talking about ample time. We got a case here, and nobody's even talked about it, an unpublished case called Jones. I think it's Jones. And Judge Williams and Judge Michael and Judge Shedd wrote on this. And specifically, as I recall, Judge Shedd took the position that the information had to be filed before trial, and that meant before the jury was sworn. And Judge Michael wrote, I think a separate concurrence or maybe a dissent, and said it has to be filed before jury selection, and that means before the jurors are picked. It doesn't mean when they're sworn. And Judge Williams wrote a separate opinion. I don't recall exactly what, but she gave the ruling, and the whole thing's unpublished. Have you studied on that one? No, Your Honor, I have not seen that. I mean, those are, these are both, all three of them, terrific judges. Certainly. And they studied on this, and it's a case on this stuff. But it's unpublished, so it's not controlling precedent. But my friend Judge Michael took one position. My friend Judge Shedd took a different position on this timing thing. So I think Judge Michael supports Mr. Thompson's position, and Judge Shedd supports your position, but both of them were only speaking for themselves. Judge Williams was speaking for the three of them on something else. But maybe Mr. Thompson knows something more about that. Before we get away, I'll bring you around. Have you got any response to his pro se brief? Your Honor, I just, I, not, just in general, I would say that the pro se brief raises a lot of arguments that, that are just obviously incorrect, arguing that the jury has to make all of the findings of fact, that the court can't make findings of fact for purposes of sentencing. And all of those findings, I don't think are, I think they're, it's a longstanding law in this circuit that, and in every circuit, that the judge can make findings on, on the facts of sentencing. Your Honor, I think that if, if there were particular points we would be willing to offer additional briefing, I did not see anything in that briefing that I think was not, you know, obviously there were points raised, but I didn't see any points that I thought were meritorious. I think Mr. Thompson's focused in on the main issues. I think, I think, Judge, the easiest way to resolve this case is . . . I'm going to interrupt you. Yes, Your Honor. I want to give you all the sites. U.S. v. Jones, 78 Fed Appendix 844, Fourth Circuit, 2003, per curiam. Three opinions, three different points of view. But Judge Williams and Judge Shedd came to the result that ended up in judgment. And it's also at footnote 3, page 12 of appellant's brief. So, you've probably seen it before. Yes, Your Honor. Your Honor, as I see that I'm about out of time, unless you have any other questions for me, we would just ask you to affirm the ruling of the district court. Thank you very much. Thank you, sir. Mr. Thompson. Very briefly. Jones is . . . I did not spend time during my argument, I would say, on Jones, or cite it very heavily in the brief. This court has a rule about citing unpublished decisions prior to 2007 unless . . . Well, there used to be a rule, but now you can cite them. Oh, okay. Well, then . . . They're worth whatever weight we want to give them. So, there's a . . . The mandate rule was also at issue in Jones, and Jones had a sentencing and an initial appeal, did not raise the 851 enhancement in either, and then went back for resentencing and raised it at the resentencing. And Judge Williams . . . And this is how you get to the judgment. Judge Williams found that the mandate rule applied. Judge Shedd . . . And that's as far as . . . This is as far as Judge Williams went. Judge Shedd found that the mandate rule did not apply, but that the 851 enhancement was timely filed. And Judge Michael found that the mandate rule did not apply, and that the 851 enhancement did not . . . was not timely filed. So, on the mandate rule, on facts very similar to this, now not 24 years, but on facts very similar to this, where it could have been raised initially and was not, two judges of this court found that the mandate rule did not bar consideration on appeal of the 851 enhancement timing. It was only that because one judge did, and one judge found that the 851 was timely, that the judgment was affirmed. So, we would obviously argue that Jones supports our position that the mandate rule does not bar consideration of this issue on appeal. But it's not precedent. It's not precedent. It's unpublished. It's unpublished, but it's informative. Yes. It's whatever way we want to give it. That is correct. With regard to blatant . . . whether the blatant error is equivalent to plain error, I am not . . . there are not many cases that I have been able to find that apply the third exception to the mandate rule. United States v. Bell did apply the third exception, and what happened in Bell was the judge had granted the defendant a new trial based on a reading of the statute saying the defendant did not actually commit the crime, and this court reversed saying that the statute actually did not have that requirement. And there was no discussion. So, there was no precedent when this court made its decision in Bell. This was something the district court had decided upon itself to find. This court did not say the district court erred in finding blatant error absent a decision of this court compelling it to do so. It seems to me the import of that case, even though the defendant was ultimately unsuccessful, is that where the error is blatant from the text of the statute, as we obviously submitted as here, then that is the inquiry for this court, not whether plain error dictated the decision at the time of sentencing, because that would be the first exception. The first exception is when a change in the law has taken place. So, when you have a change in the law, and that is why . . . that is why . . . that is why Kennedy is different. Forgive me, I was struggling to come up with a name. That is why Kennedy is different, because Kennedy involves the first exception to the mandate rule, not the third, because McCollum had been decided while the appeal was pending . . . while they were pending resentencing. And so, at that point in time, it was plain error for the district court to have sentenced Mr. Kennedy as a career offender. So, if plain error dictates the change in the law for the first exception, then what is left for the third exception? Right? And, we would submit that is where it is just blatantly apparent from the text of the statute . . . The third exception is manifest injustice. Manifest . . . yes, yes. One . . . a couple of final notes. The . . . with regard to jury selection, I would note that it has been my experience with the United States Attorney's Office . . . I cannot swear it happens in every case, but that if a jury is selected, the government does not move for the third level of acceptance of responsibility under United States Sentencing Guidelines, Section 3E1.1, which to me indicates that they believe that jury selection is trial, because that means that they were preparing for trial. They can withhold it if they were preparing for trial. I see I'm out of time. I just wanted to mention, I did not . . . I did not notice the signature on 851, the lack of a signature. That is the court document. That is what's filed on the district court's document. What is docket is what's in the joint appendix. So, that is all I have available to me. Do you say that's a defective notice or defective information then? I would. I did not raise that, so . . . I know you didn't raise it, but I'm not going to get another chance to ask you about it. Yes. I mean, I think it needs to be signed. It's got a stamp on it. Right. By the clerk. Yes. Not by the United States Attorney. I don't believe Pacer was around. I don't want to argue against myself. I don't believe Pacer was around in 1998. It has a clock stamp of 1998 on it, but I believe the document was physically filed. But, to me, it would indicate that what happened was, after this case was remanded, the clerk inserted the hyperlink for the document that she had in her possession from the physical file, which is just what is reproduced in the joint appendix, which does not have a signature. You kind of lost me on all that, but I'm sure that, by now, you all have convinced these law students that they don't want anything more to do with the law. I don't know that I've ever met a lawyer who has ever recommended to anybody to go to law school. I'm recommending that you go to law school. I've enjoyed my career. So, if the court has no further questions, we would ask this court to vacate and remand for resentencing without the 851 enhancement. Thank you, Mr. Thompson. Thank you. We appreciate your work. And you also, Mr. Schoen. We'll come down and greet counsel, and I want counsel, the two of you, to come up and greet Judge Floyd. And then we'll proceed to the next case. Thank you.
judges: Robert B. King, Stephanie D. Thacker, Henry F. Floyd